JOY COSSICH LOBRANO, Judge.
| plaintiff, Denise Ebanks, appeals the November 26, 2012 trial court judgment denying her motion for partial summary judgment, granting summary judgment in favor of the defendant, State of Louisiana, Department of Transportation and Development (“DOTD”), and dismissing plaintiffs claims against DOTD with prejudice.
On April 28, 2011, the plaintiffs husband, John Ebanks, was a passenger in a pickup truck, which was being driven by Michael H. Demelio on Louisiana State Highway 46 in St. Bernard Parish. When the pickup truck approached the intersection of Louisiana State Highway 46 and Livaccari Drive, Mr. Demelio drove partially onto the shoulder of the highway in order to go around another vehicle that was slowing down to make a left turn. In *563attempting to go around the turning vehicle, Mr. Demelio’s vehicle struck a large oak tree that was growing in the shoulder of Louisiana State Highway 46. Mr. Ebanks suffered serious injuries in the collision and died two days later as a result of those injuries.
| aPlaintiff filed the instant lawsuit naming as defendants Mr. Demelio, his insurer, Metropolitan Group Property and Casualty Insurance Company, and the DOTD. She alleged that Mr. Demelio was intoxicated at the time of the accident and that his intoxication was a cause of the accident and fatal injuries suffered by Mr. Ebanks. Her lawsuit also alleged that an additional cause of the accident was the negligence of the DOTD because the DOTD knew or should have known of the presence of the oak tree that was growing in and obstructing the shoulder of Louisiana State Highway 46, rendering the roadway unreasonably dangerous. Plaintiff alleges that the DOTD failed to properly maintain the shoulder of Louisiana State Highway 46 and failed to place warning signs of an obstructed shoulder.
After the DOTD filed its answer to the plaintiffs lawsuit asserting several affirmative defenses, the plaintiff filed a motion for partial summary judgment, seeking judgment in her favor on the inapplicability of the drunk driver immunity statute, La. R.S. 9:2798.4, one of the affirmative defenses pleaded by the DOTD. The trial court denied plaintiffs partial motion for summary judgment on December 27, 2011. Shortly thereafter, plaintiff filed a motion for partial dismissal with reservation of rights, stating that a settlement had been reached between her and Mr. Demelio and Metropolitan Group Property & ^Casualty Insurance Company. On February 15, 2012, the trial court issued an order dismissing plaintiffs claims against Mr. Demelio and Metropolitan Group Property and Casualty Insurance Company, with prejudice, but reserving plaintiffs rights against the DOTD and others.
Plaintiff subsequently filed another motion for partial summary judgment, seeking a judgment striking the affirmative defense asserted by the DOTD pursuant to La. R.S. 9:2798.1, regarding the alleged immunity by DOTD for policy-making or discretionary acts. Plaintiff claims that DOTD’s decisions not to remove the tree in question and not place a guardrail or shield around the tree during the design, scoping and/or environmental phase of the 2004 road overlay State Project No. 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 of Highway 46 were operational in nature and are not discretionary function decisions for which La. R.S. 9:2798.1 provide immunity. Plaintiff further claims that DOTD’s decisions made prior to the April 28, 2011 vehicular accident in question as to the upkeep and maintenance of Louisiana State Highway 46, including the decision not to remove the tree, the decision not to place a guardrail around the tree, and the decision not to place a warning sign that the shoulder was narrow or obstructed were also operational in nature. In support of this motion, plaintiff submitted a memorandum; the DOTD’s answer to plaintiffs petition; the DOTD’s answers to plaintiffs first set of interrogatories and amending and supplemental answers to those interrogatories; a copy of a DOTD document entitled “Engineering Directives and Standards” on the subject of treatment of significant trees in a DOTD right-of-way; excerpts from a videotaped deposition of Michael J. Stack, the DOTD’s designated representative and the ^District 2 Design, Water Resources and Development Engineer; exhibits attached to that deposition; and plaintiffs statement of uncontested material facts.
The DOTD then filed a motion for summary judgment arguing that it is entitled *564to immunity in this case under La. R.S. 9:2798.1, and that plaintiffs claims against it should be dismissed because 1) the tree struck in the collision involving plaintiffs husband was identified as a significant tree under DOTD’s policy relating to “Treatment of Significant Trees,” which policy prevented such trees from being damaged or destroyed, and 2) in conjunction with a road overlay project in 2004, the DOTD obtained design exceptions to its policy requiring all non-crashworthy obstacles, such as trees, to be outside of a clear zone that is at least ten feet from a highway. The DOTD claims that the design exceptions allowed the road overlay project to be completed without removal or shielding of the tree involved in the collision.
DOTD further argued that no warning sign was required for this tree prior to the collision at issue because there were no previous complaints about the area of the accident relating to the width of the shoulder or the tree in question. In support of its motion for summary judgment, the DOTD submitted the following: a memorandum; a statement of uncontested material facts; plaintiffs petition; excerpts from the deposition of Heather Brooks, the driver of the vehicle that the truck driven by Mr. Demelio was attempting to pass when the accident occurred; a diagram of the accident attached to Ms. Brooks’ deposition; the DOTD’s answers to plaintiffs first set of interrogatories; excerpts from Mr. Stack’s deposition; the | aDOTD’s document regarding engineering directives and standards for the treatment of significant trees in a DOTD right-of-way; a document entitled “Design Report, Design Exception and Clear Zone Guidelines for Pavement Preservation Projects (Non-Interstate)” from DOTD; and excerpts from the deposition of Steven C. Strength, the DOTD District Traffic Operations Engineer for the area where the accident occurred.
Plaintiff opposed the DOTD’s motion for summary judgment and attached the following to her opposition memorandum: the afore-mentioned DOTD document regarding the treatment of significant trees in a DOTD right-of-way; excerpts from the depositions of Mr. Stack, Ms. Brooks and Mr. Strength; and a response to the DOTD’s statement of uncontested material facts. DOTD filed a memorandum in opposition to plaintiffs motion for partial summary judgment and a supplemental memorandum in support of its motion for summary judgment, and plaintiff filed a memorandum in reply thereto.
Following a hearing, the trial court rendered judgment denying plaintiffs motion for partial summary judgment and granting the DOTD’s motion for summary judgment, dismissing all of plaintiffs claims against the DOTD, with prejudice. Plaintiff now appeals the trial court judgment, arguing that the trial court erred in granting the DOTD’s motion for summary judgment and denying her motion for partial summary judgment.
An appellate court reviews summary judgments de novo, using the same criteria that govern the trial court’s determination of whether summary judgment is [ inappropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, 2007-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882.
La. R.S. 9:2798.1, entitled “Policymaking or discretionary acts or omissions of public entities or their officers or employees,” states:
A. As used in this Section, “public entity” means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instru-mentalities, officers, officials, employees, *565and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
17Recently, this Court addressed the jurisprudence involving discretionary immunity and noted:
The Louisiana Supreme Court in Gregor v. Argenot Great Cent Ins. Co., 2002-1138 (La.5/20/03), 851 So.2d 959, explained that the immunity from liability established in La. R.S. 9:2798.1 is essentially the same as the immunity conferred on the federal government by the exception in the Federal Tort Claims Act (FTCA). Citing Fowler v. Roberts, 556 So.2d 1 (La.1989) (on rehearing), the Supreme Court reasoned:
... [i]n Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the United States Supreme Court developed the following two-step analysis to examine immunity under FTCA: (1) whether a statute, regulation, or policy specifically proscribes a course of action; and (2) whether the challenged action is grounded in political, economic or social policy. This Court adopted the Berkovitz inquiry to analyze the applicability of La.Rev.Stat. 9:2798.1, describing it as follows:
Discretion exists only when a policy judgment has been made. Judicial interference in executive actions involving public policy is restrained by the exception. Thus, the exception protects the government from liability only at the policy making or ministerial level, not at the operational level. Fowler, 556 So.2d at 15.
Id., pp. 10-11, 851 So.2d at 966-67. Furthermore, “[w]hen the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures.” Fowler, 556 So.2d at 15-16....
As the Franatoviches point out, “... [t]he decision to repair or perform maintenance on a particular road, and the extent of the repairs or maintenance, is a decision which the authority responsible for upkeep and maintenance of that road ... must make.” Odom v. City of Lake Charles, 00-01050, pp. 10-11 (La.App.3 Cir.1/31/01), 790 So.2d 51, 58 (citing Valet v. City of Hammond, 577 So.2d 155, 166-67 (La.App. 1 Cir.1991)). Such decisions are operational in nature and [8are not policy-making or discretionary function decisions for which La. R.S. 9:2798.1 provides immunity. Id.
*566Franatovich v. St. Bernard, Parish Gov’t, 2011-1128, pp. 6-7 (La.App.4 Cir.3/21/12), 88 So.3d 1169, 1174-1175, writ denied, 2012-0989 (La.6/15/12), 90 So.3d 1063.
In the DOTD document entitled “Engineering Directives and Standards,” pertaining to the subject of “Treatment of Significant Trees in DOTD Right-of-Way,” the section entitled “Design Considerations” states as follows:
The Landscape Architectural staff, and District Roadside Development Coordinators shall be consulted during the scoping and/or environmental phase. The Landscape Architectural staff shall identify significant trees during the scoping and/or environmental phase. The Design Section shall indicate significant trees on the plans and implement a context sensitive design (i.e. preservation, specified limited impact, or special treatment) to accommodate these trees where practical.
According to the DOTD, in 2004, it obtained design exceptions for horizontal clearance and lane and shoulder width for a road overlay project on Louisiana State Highway 46. The request for the design exceptions, authored by Michael Stack, the DOTD District 2 Design, Water Resources & Development Engineer, included the statement, “There are currently numerous obstacles within the clear zone on this project and to relocate and/or protect these obstacles would go beyond the scope of the project.” The DOTD’s guidelines for obtaining a clear zone design exception are set forth in a document entitled, “Design Report Design Exception & Clear Zone Guidelines for Pavement Preservation Projects (Non-Interstate),” and state as follows, in pertinent part:
Clear zone must be defined for each project individually as required by the 3R standard. The required clear zone must be a minimum of 10' from edge of travel lane. If non-crashworthy objects or obstacles | ¡¡are found within the established clear zone they must be removed or be shielded by some crashworthy device such as guard rail. If the object is a tree, then approval to remove the tree must be obtained from the Chief Landscape Architect. If an object or obstacle cannot be removed or shielded, a design exception to the clear zone requirement must [be] approved.
The DOTD asserts that the 2004 design exceptions allowed the overlay project to be completed without the removal or shielding of. the tree involved in the collision at issue.
At a deposition conducted pursuant to La. C.C.P. article 1442, Mr. Stack was designated by DOTD as its representative to testify on its behalf. Mr. Stack confirmed that no one from the DOTD’s landscape architectural staff identified significant trees during the scoping and/or environmental phase of the road overlay project for which the design exceptions were obtained. Specifically, the following exchanges took place during Mr. Stack’s deposition:
Q. All right. .And who goes out and decides or who goes out and determines what trees fit the definition on a project such as Project 0069 and what trees don’t fit that definition? In other words, who decides which trees are significant under that definition and which trees are not?
A. Ultimately, the landscape architect in Baton Rouge is the ultimate decision-maker.
[[Image here]]
Q. No one from the landscape architectural staff or section, as you have also used the word, identified significant trees during the scoping and/or environ*567mental phase of Project 0069, because they weren’t involved in that project?
A. Correct. Correct.
[[Image here]]
ImQ. I will try again. The last sentence of “Design Considerations,” section 3 on the directive says, “The Design Section shall indicate significant trees on the plans.” Do you see that part?
A. Correct. Correct.
Q. All right. The “significant trees” that that sentence is referring to are the “significant trees” that “the Landscape Architectural staff shall identify during the scoping and/or environmental phase,” correct?
A. Correct.
Additionally, in the following exchange, the attorney for the DOTD stipulated that the landscape architectural staff had no involvement with the tree struck in the collision that prompted this lawsuit: *568collision was identified as a significant tree during the scoping and/or environmental phase of the 2004 road overlay project,3 there is no question of fact that the DOTD did not adhere to the directives of its significant tree policy.
*567Mr. Morgan [attorney for plaintiff]:
In order to resolve document request No. 3, which we just, for clarity purposes, requested “a copy of all documents or things which the DOTD’s Landscape Architectural staff created, reviewed or relied on in connection with its involvement with the tree involved in this lawsuit,” it’s my understanding that DOTD is stipulating that the landscape architectural staff had no involvement with the tree involved in this lawsuit, is that correct, Mr. Sudderth?
Mr. Sudderth:
That’s correct.
Mr. Morgan:
Okay. And that stipulation is a binding and enforcement stipulation throughout this litigation?
Mr. Sudderth:
Sure.
The DOTD argues that its decisions to enact its significant tree policy and clear zone design exception policy were policy-making and discretionary acts |nunder La. R.S. 48:2671 and 48:268.2 Based on this argument, the DOTD contends that it is entitled to immunity under La. R.S. 9:2798.1, which exempts public entities from liability for their employees’ policy-making or discretionary acts. The plaintiff argues that the DOTD’s decision not to remove the tree involved in the collision or place a guardrail around it was operational in nature, and not a policy-making or discretionary decision for which La. R.S. 9:2798.1 provides immunity.
The portion of the significant tree policy, which states, “[t]he Landscape Architectural staff shall identify significant trees during the scoping and/or environmental phase,” sets forth a non-discretionary action to be performed by the landscape architectural staff. Because it is undisputed that the DOTD’s landscape architectural staff never made any decision as to whether or not the tree involved in the
*568| ^However, there are genuine issues as to material facts in this particular case regarding DOTD’s policies in the design, overlay, and maintenance of state highways, which preclude summary judgment.4 We do not have adequate information in the record before us to determine whether DOTD’s decisions not to remove the tree in question and not place a guardrail or shield around the tree during the design, scoping and/or environmental phase of the 2004 road overlay State Project No. 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 of Highway 46 policies were discretionary. While there is no question that the approval to remove a tree from a clear zone must be obtained by the DOTD’s Chief Landscape Architect, the DOTD did not want to remove the tree at issue when it performed its road overlay project in 2004. Instead, the DOTD sought and obtained design exceptions to avoid having to remove the tree. The design exceptions were based on the last sentence of the clear zone design exception policy stating, “[i]f an object or obstacle cannot be removed or shielded, a design exception to the clear zone requirement must [be] approved.” It is unclear from the record as to DOTD’s policy, if any, in determining whether an object or obstacle in a clear zone cannot be removed or shielded. Accordingly, we find that questions of material fact remain as to whether the DOTD’s clear zone design exception policy was discretionary or operational in nature. Additionally, the record is insufficient with respect to DOTD’s maintenance policies regarding the treatment of trees located on the shoulder of a highway, the placement of guardrails around trees, and the placement of warning |issigns that a shoulder was narrow or obstructed. Id. Thus, summary judgment on the issue of DOTD’s immunity under La. R.S. 9:2798.1 was improperly granted.
For the reasons stated above, we reverse the trial court judgment granting summary judgment in favor of the DOTD, affirm the denial of plaintiffs motion for partial summary judgment, and remand this case for further proceedings. Each party shall bear its own costs.
REVERSED IN PART; AFFIRMED IN PART; REMANDED
... a Live Oak, Red Oak, White Oak, Magnolia or Cypress that is considered aesthetically important, 18" or greater in diameter at breast height (4' — 6" above the ground), and having a form that separates it from the surrounding vegetation or is considered historic. A historic tree is a tree that stands at a place where an event of historic significance occurred that had local, regional, or national importance. A tree may also be considered historic if it has taken on a legendary stature to the community; mentioned in literature or documents of historic value; considered unusual due to size, age or has landmark status. Significant trees must be in good health and not in a declining condition.

. La. R.S. 48:267 states:
When not inconsistent with the economy of construction and maintenance of state highways or with the safety of the traveling public, the department and its employees shall study, encourage, and preserve the growth of trees, shrubs, and other vegetation indigenous to the climate of Louisiana, in order to perpetuate the natural beauty of the state. The department may replace and augment this growth when consistent with these ideas.

. La. R.S. 48:268 states:
The felling, topping, or pruning of trees or shrubs to accommodate, operate, or maintain any installation on the right of way, without the prior written approval of the secretary or his representative, is prohibited. The secretary may use his discretion in the granting of this approval.

. The DOTD directive on the identification of significant trees in a DOTD right-of-way defines a significant tree as follows:

. See Harris v. State ex rel. Dept. of Transp. and Development, 2007-1566, pp. 20-21 (La.App.1 Cir. 11/10/08), 997 So.2d 849, 863-864 (where the court found that "DOTD’s duties toward motorists in the design, construction, and maintenance of state highways are often difficult to reconcile in terms of their ultimate results, despite general consistency in their description of the basis and scope of those duties," and that ”[t]he issue of whether a highway project constitutes a major reconstruction of the highway is a factual issue, rather than a legal issue.”)